

**FILED**

**Margaret Botkins
Clerk of Court**

10:27 am, 10/30/23

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

MING HONG ZHENG,

    Plaintiff,

v.

HALLIBURTON ENERGY
SERVICES, INC.,

    Defendant.

Case No. 23-CV-00098-ABJ

## ORDER GRANTING DEFENDANT'S *MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS*

THIS MATTER comes before the Court on Halliburton Energy Services, Inc.'s *Motion to Compel Arbitration and Stay Proceedings* ("*Motion*"). ECF No. 27. After reviewing the *Motion*, the filings, the applicable law, and being otherwise fully advised, the Court GRANTS Defendant's *Motion* and stays this matter.

### BACKGROUND[1]

Ming Hong Zheng ("Plaintiff" or "Ms. Zheng") is a former employee of Halliburton Energy Services, Inc. ("Defendant" or "Halliburton"). Dating back to early 2019, Ms. Zheng applied for a job with Halliburton as an associate field professional. ECF No. 1 at 32; ECF No. 27 at 2. She used Halliburton's website (Jobs.Halliburton.com) to submit her application on January 24, 2019. ECF No. 27 at 2; *Declaration of Sheri Whitaker*, ECF No.

---

[1] The bulk of this background section is taken from Plaintiff's *Complaint* (ECF No. 1), the United States District Court for the Northern District of New York's order granting Defendant's motion to dismiss for lack of personal jurisdiction (ECF No. 19), Defendant's *Motion to Compel Arbitration and Stay Proceedings* (ECF No. 27), and the *Declaration of Sheri Whitaker* (ECF No. 27-1).

27-1 ¶ 5. As part of Ms. Zheng's application, she was required to agree to what Halliburton calls its Dispute Resolution Program ("DRP"). *Declaration of Sheri Whitaker*, ECF No. 27-1 ¶ 9. Ostensibly, all prospective employees read through the terms of the DRP and consent to be bound by it; the language potential-hires see is as follows:

> I agree that any dispute between Halliburton and me arising from or relating to the application process and any employment relationship that might thereafter be formed will be resolved under the Halliburton Dispute Resolution Program ("DRP"). Under the DRP, all employment disputes that are not otherwise resolved by mutual agreement must be arbitrated under the DRP rules. I understand that this agreement is binding on me and Halliburton and that I am waiving any right to a jury trial for such disputes. Under the DRP, arbitrator shall apply the substantive law applicable to the dispute and shall not abridge or enlarge the legal rights, remedies or defenses of the parties. The decision of the arbitrator shall be final and binding on me and the company and may be confirmed in, and judgment upon the award entered by any court of competent jurisdiction. The DRP is herein incorporated by reference. The DRP Plan and Rules are available for review via the link included on this online application. *DRP Plan and Rules*.

*Id.* (emphasis added). The italicized portion above represents a hyperlink that would direct the applicant to a copy of the DRP's full plan and rules. *Id.* Following this above statement, the applicant would then consent to the agreement "by clicking on a drop-down field…and selecting the words 'I acknowledge that I have reviewed the Plan and Rules and agree to its terms.'" *Id.* Without agreeing to the DRP, the application cannot be completed nor submitted. *Id.* Via this process, Ms. Zheng agreed to the DRP and submitted her application. *Id.* ¶¶ 11–12. Subsequently, Halliburton emailed Ms. Zheng an offer letter to be completed using DocuSign.[2] *Id.* at ¶¶ 13–14. The offer letter, much like the agreement

---

[2] DocuSign is a popular tool by which users can distribute, manage, and sign electronic agreements.

in the application, contained a provision regarding Halliburton's DRP. That language is as follows:

> Your decision to accept employment constitutes your agreement to resolve all employment related disputes with your employer by arbitration under the Halliburton Dispute Resolution Program ("DRP"). A copy of the DRP Plan and Rules may be accessed at the Halliburton website at http.//www.halliburton.com/public/pubsdata/related_docs/DRP_Plan_Rules.pdf. Under the DRP, all employment disputes that are not otherwise resolved by mutual agreement must be arbitrated under the DRP rules. This agreement is binding on both you and the company. This agreement constitutes a waiver of your right to a jury trial. The arbitrator shall apply the substantive law applicable to the dispute and shall not abridge or enlarge the legal right, remedies or defenses of the parties. The decision of the arbitrator shall be final and binding on you and the company and may be confirmed in, and judgment upon the award entered by any court of competent jurisdiction. The DRP is incorporated by reference. By signing and returning this letter, you acknowledge that you have reviewed the DRP and agree to its terms.

ECF No. 27-4 ¶ 6. Halliburton received an executed copy of the offer letter through DocuSign containing Ms. Zheng's electronic signature. ECF No. 27-4; ECF No. 27-5. Following acceptance, Ms. Zheng began working for Halliburton on March 11, 2019. ECF No. 28 at 4. On May 26, 2019, Ms. Zheng was injured while on the job. *Id.* As a result of the injury, Ms. Zheng was not permitted to return to work and was placed on medical leave. *Id.* Ms. Zheng never returned to work, and her medical leave of absence expired more than two years later. *Id.* At that point Halliburton terminated her employment, effective July 1, 2022. *Id.*

Following termination, Ms. Zheng filed this action, *pro se*,[3] in federal district court in New York, alleging, *inter alia*, that Halliburton violated her rights under the Americans

---

[3] Because Ms. Zheng is *pro se*, we view her filings less punctiliously, for "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, even though the bar is lowered, *pro se* litigants are not relieved

with Disabilities Act ("ADA")[4] by failing to make reasonable accommodations for her after her injury.[5] *Id.* On June 1, 2023, the United States District Court for the Northern District of New York transferred the case to this Court. ECF No. 19 at 15 (granting Defendant's motion to dismiss for lack of personal jurisdiction and transferring Plaintiff's claims to the District of Wyoming pursuant to 28 U.S.C. § 1406(a)).[6] Defendant requested that Plaintiff submit to arbitration on multiple occasions, and she has refused. ECF No. 27 at 4. Now, Defendant asks this Court to compel arbitration pursuant to the DRP agreements. *Id.*

## LEGAL STANDARDS

Fundamentally, arbitration is a matter of contract law; a party cannot be bound to arbitrate absent their consent. *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582

---

from "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.* And it is not the "function of the district court to assume the role of advocate for the *pro se* litigant." *Id.*

[4] As the United States District Court for the Northern District of New York points out, Ms. Zheng's *Complaint*, "only asserts that she brings claims pursuant to the ADA but she also alleges discrimination and retaliation 'due to national origin, ethnicity, religion, race and gender.' [ECF No. 1 at 9–31]. Construing her allegations liberally, these claims are properly brought under Title VII, rather than the ADA, which only covers employment-based retaliation and discrimination due to disability." ECF No. 19 at 1 n.1. As such, we shall consider those claims as if they were properly brought under Title VII.

[5] In her *Complaint*, Ms. Zheng lists the following as the basis for her suit: wrongful termination of employment, discrimination, sabotage, and retaliation due to national origin, ethnicity, religion, gender, and race. ECF No. 1 at 3, 7–34. She details at great length an alleged "pattern of ongoing discrimination, retaliation, and harassment." *Id.*

[6] Since Plaintiff's suit was improperly brought in the Northern District of New York due to its lack of personal jurisdiction over Defendant, the law of the transferee forum applies. As numerous circuits have noted, it would be unfair to make a defendant "suffer the choice-of-law consequence of a plaintiff's mistake in choosing such a forum." *Eggleton v. Plasser & Theurer Export Von Bahnbaumaschinen Gesellschaft, MBH*, 495 F.3d 582, 588 (8th Cir. 2007); *see also, Gerena v. Korb*, 617 F.3d 197, 204 (2d Cir. 2010) ("[I]f a district court receives a case pursuant to a transfer under 28 U.S.C. § 1406(a), for improper venue…it logically applies the law of the state in which it sits, since the original venue, with its governing laws, was never a proper option."). And as the Tenth Circuit Court of Appeals has articulated: "Generally, when a district court transfers a case to another forum, the transferee court must follow the choice of law rules of the transferor court. When the transferor court lacks personal jurisdiction, however, the choice of law rules of the transferee court apply." *Doering v. Copper Mt., Inc.*, 259 F.3d 1202, 1209 (10th Cir. 2001).

(1960)).[7] It follows then that a court "must first determine *whether there exists an enforceable agreement to arbitrate.*" *Brayman v. KeyPoint Gov't Sols., Inc.*, Nos. 22-1118, 22-1168, 2023 U.S. App. LEXIS 26103, at *13 (10th Cir. Oct. 3, 2023) (emphasis added). Thereafter, courts are tasked with determining who the agreement binds and whether the agreement covers or contemplates the controversy at issue. *Id.* at 13–14 (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69 (2010)). To this end, courts rely on state contract law principles. *First Options of Chicago, Inv. V. Kaplan*, 514 U.S. 938, 944 (1995). But as the Supreme Court has noted, "state law is preempted to the extent it 'stands as an obstacle to the accomplishment and execution of the full purpose and objectives' of the [Federal Arbitration Act]." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011)).

The Federal Arbitration Act ("FAA") makes arbitration agreements "valid, irrevocable, and enforceable," and authorizes courts to compel arbitration in accordance with the terms of the agreement.[8] 9 U.S.C. §§ 2, 4; *Lamps Plus, Inc.*, 139 S. Ct. at 1412. If the court orders arbitration, the FAA also requires courts to stay litigation pending resolution. 9 U.S.C. § 3. A bedrock principal of the FAA, as reiterated by myriad Supreme Court decisions, is that arbitration is a matter of consent. *Lamps Plus, Inc.*, 139 S. Ct. at

---

[7] *See also, Buckeye Check Cashing, Inc. v. Cardegna*, 546, U.S. 440, 443 (2006) (holding that under the Federal Arbitration Act, arbitration agreements should be treated like all other contracts).

[8] The Wyoming legislature has adopted the FAA making arbitration agreements "valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of the contract. This includes arbitration agreements between employers and employees or between their respective representatives unless otherwise provided in the agreement." Wyo. Stat. Ann. § 1-36-103.

5

1415. "Consent is essential under the FAA because arbitrators wield only the authority they are given. That is, they derive their 'powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution.'" *Id.* at 1416 (quoting *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010)). The contracting parties, for the most part, are free to tailor the terms of the agreement "specifying with whom they will arbitrate, the issues subject to arbitration, the rules by which they will arbitrate, and the arbitrators who will resolve their disputes." *Id.* If the court compels arbitration, the arbitrator of the dispute, just as judge in a contract dispute, is tasked with giving full effect to the intent of the parties. *Id.*

In individual arbitration, as distinct from class arbitration, "parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Stolt-Nielsen S.A.*, 559 U.S. at 1775. Due to these benefits, the Supreme Court has routinely recognized and enforced arbitration clauses. *See, e.g., Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018).

If a party wishes to enforce an arbitration agreement, but the other party opposes, they may move the court, under the FAA, for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. In a motion to compel arbitration, the movant initially bears the burden "of presenting evidence sufficient to demonstrate the existence of an enforceable agreement and the opposing party's failure, neglect, or refusal to arbitrate[,]" and if the movant meets their burden, "the burden then shifts to the nonmoving party to raise a genuine dispute of material fact regarding the

existence of an agreement or the failure to comply therewith." *BOSCA, Inc. v. Bd. of Cty. Comm'rs*, 853 F.3d 1165, 1177 (10th Cir. 2017).

If upon first blush, however, the court finds no material dispute of facts, "a district court may 'decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration.'" *Id.* (quoting *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014)).

## DISCUSSION

At the crux of this matter is whether the Plaintiff—in applying for and subsequently accepting employment via online means—entered a valid contract binding her to arbitration. For the forthcoming reasons, the Court finds that Plaintiff entered a valid contract and as such shall be compelled to arbitrate her dispute with Defendant:

**I.     State contract law principles govern whether an arbitration agreement is enforceable.**

As the Defendant correctly notes, principles of state contract law govern whether the arbitration agreement was valid. ECF No. 27 at 6 (citing *Hardin v. First Cash Fin. Servs.*, 465 F.3d 470, 475 (10th Cir. 2006) ("Generally, courts should apply ordinary state-law principles that govern the formation of contracts to determine whether a party has agreed to arbitrate a dispute.") (quotation marks omitted)). As such, this Court looks to whether a valid contract was formed between the parties and what the scope of that contract is while using the strictures of Wyoming contract law to guide the analysis.

Wyoming generally adheres to those oft-repeated axioms of contract formation. That is, an offer, acceptance, and valuable consideration are required to form a valid

contract. *Kindred Healthcare Operating, Inc. v. Boyd*, 403 P.3d 1014, 1024 (Wyo. 2017). Moreover, the Wyoming Supreme Court has stated that mutual assent is necessary in any contract, but it needn't be the case that "each term [is] spelled out in minute detail. The parties need only agree upon the essentials of the contract and those essentials must be ascertainable." *Id.* (citing *Roussalis v. Wyo. Med. Ctr., Inc.*, 4 P.3d 209, 231–32 (Wyo. 2000) (internal citation omitted)).

The fact that a party did not read the terms of the agreement is typically not a bar to its enforceability either. As Wyoming law instructs: "One who signs a contract generally cannot avoid it on the ground that he did not attend to its terms, or did not read it, or supposed that it was different in its terms, or that he took someone's word as to what it contained." *Estate of Dahlke ex rel. Jubie v. Dahlke*, 319 P.3d 116, 128 (Wyo. 2014) (quoting *Laird v. Laird*, 597 P.2d 463, 467 (Wyo. 1979)). "Further, when a signed contract incorporates by reference another document, that document becomes part of the contract even when it is not separately signed." *Fleig v. Estate of Fleig*, 413 P.3d 638, 642–43 (Wyo. 2018) (citing *LDF Constr., Inc. v. Tex. Friends of Chabad Lubavitch*, Inc., 459 S.W.3d 720, 728 (Tex. Ct. App. 2015)).

## II. The clickwrap agreement was a valid contract binding Plaintiff to arbitration.

Defendant asserts that Plaintiff first consented to be bound to arbitration during her application process: "Plaintiff manifested her acceptance of [Halliburton's] offer of the DRP in her application by selecting the drop-down option 'I acknowledge that I have reviewed the [DRP] and agree to its terms' in response to the DRP disclosure." ECF No. 27 at 6. Further, Defendant contends that the link to the full terms of the DRP was

incorporated by reference and is enforceable. *Id.* (citing *Pennaco Energy, Inc. v. KD Co. LLC*, 363 P.3d 18, 38 (Wyo. 2015)).

This form of agreement is what's known as clickwrap—a subsect of contracts formed by electronic/online means. Specifically, clickwrap is a type of electronic assent whereby a party is "required to click on an 'I agree' box after being presented with a list of terms and conditions of use[,]"[9] or as in this case, a drop down option requiring the user to respond "I acknowledge that I have reviewed the Plan and Rules [of the DRP] and agree to its terms." ECF No. 27-3 at 7.

As the Tenth Circuit has noted, "[c]lickwrap agreements are increasingly common and 'have routinely been upheld.'" *Hancock v. AT&T Co.*, 701 F.3d 1248, 1256 (10th Cir. 2012) (quoting *Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1226 (D. Haw. 2010)). "Federal and state courts typically evaluate clickwrap agreements by applying state law contract principles" and evaluate "whether a clickwrap agreement's terms were clearly presented to the consumer, the consumer had an opportunity to read the agreement, and the consumer manifested an unambiguous acceptance of the terms." *Id.* (citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 28–32 (2d Cir. 2002)).

In reviewing the first agreement, the Court finds first two elements of a valid contract are easily met here, for Halliburton's website, inviting interested parties to submit their applications, serves as the requisite "manifestation of asset, called an offer," by the

---

[9] *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–76 (9th Cir. 2014); *see also*, *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007) ("A clickwrap agreement appears on an internet webpage and requires that a user consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with the internet transaction.").

9

offeror, and the submission of an application through Halliburton's website serves as "a manifestation of assent, called an acceptance," by the offeree. *See Positive Progressions, Ltd. Liab. Co. v. Landerman*, 360 P.3d 1006, 1019 (Wyo. 2015) (quoting *Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211, 218 (Wyo.1994)).

The valuable consideration requirement is also met in this matter. Pursuant to Wyoming contract law, "[c]onsideration may take a variety of forms including the performance of some act, a forbearance, or the creation, modification, or destruction of a legal relationship." *Schlesinger v. Woodcock*, 35 P.3d 1232, 1237 (Wyo. 2001). Under this principle, the Wyoming Supreme Court has held that an exchange of "mutual promises to forbear [the parties'] right to resolve disputes in court and create a new legal relationship requiring them to [arbitrate]…was sufficient consideration to support an [arbitration] agreement." *Kindred Healthcare Operating, Inc.*, 43 P.3d at 1025.

Here, the Court finds that there was adequate consideration to support the DRP agreement; this is evidenced by Defendant and Plaintiff's mutual agreement to settle disputes via arbitration in lieu of litigation. This act of forbearance and mutual assent created exactly the type of new legal relationship as in *Kindred Healthcare Operating, Inc. Id.* As such, we find that the first agreement—whereby Ms. Zheng consented to submit disputes with her employer to arbitration—is a valid contract.

Further, the fact that Ms. Zheng entered into this first agreement via electronic means, *i.e.*, clickwrap, is not a bar to the DRP's enforceability. As the Tenth Circuit noted, courts look to clickwrap agreements under the principles of state contract law. *Hancock*, 701 F.3d at 1256. Here, we find that Halliburton's online application process conspicuously

listed the terms of the arbitration agreement and allowed for review of the DRP's terms and rules (via hyperlink). Further, we find that Ms. Zheng—in clicking "I acknowledge that I have reviewed the Plan and Rules [of the DRP] and agree to its terms"—thereby agreed to resolve all employment-related disputes under Halliburton's DRP.[10]

### III. The offer letter and acceptance, signed via DocuSign, was a valid contract binding Plaintiff to arbitration.

Defendant also asserts that when Ms. Zheng received her offer letter and accepted employment, she again agreed to be bound by the DRP. ECF No. 27 at 7. We agree. The elements of a valid contract under Wyoming law are all satisfied here. Halliburton's offer letter served as its manifestation of asset, *i.e.*, the offer, and Ms. Zheng's execution of the offer letter through DocuSign served as her manifestation of assent, *i.e.*, the acceptance. *Id.*; ECF No. 27-5 at 1, 3–5; *see Positive Progressions, Ltd. Liab. Co.*, 360 P.3d at 1019.

The consideration element is met here as well. Just as before, both parties agreed to forbear their right to resolve employment disputes in court and agreed to enter a new legal relationship requiring them to submit to arbitration. *See Kindred Healthcare Operating, Inc.*, 43 P.3d at 1025. And once again, the fact that the contract was entered into via electronic means is not a bar to its enforceability. Under Wyoming law, just as under federal law, a contract or a signature thereon "may not be denied legal effect, validity, or

---

[10] As we have previously held—pursuant to the FAA and Wyoming law—arbitration agreements do not require the signatures of the parties to be binding. *See Harvey v. Halliburton Energy Servs.*, No. 1:19-CV-0027-SWS, 2019 U.S. Dist. LEXIS 238835, at *7 (D. Wyo. Apr. 1, 2019) ("Nor does Wyoming law require a written agreement to arbitrate be signed."). However, the FAA *does* require a writing evidencing the agreement. *See Bellman v. i3Carbon, Ltd. Liab. Co.*, 563 F. App'x 608, 614 (10th Cir. 2014). Wyoming law also holds that "[a]n agreement to arbitrate need not be written and can arise as the result of the conduct of parties to an existing dispute regardless of whether or not they have previously contracted for arbitration." *Hot Springs Cty. Sch. Dist. v. Strube Constr. Co.*, 715 P.2d 540, 545 (Wyo. 1986).

enforceability solely because it is electronic in form" or "because an electronic record was used in its formation." Wyo. Stat. Ann. § 40-21-107(a)–(b); *see* 15 U.S.C. § 7001(a)(1).

Based upon the foregoing, the Court finds that Defendant has met its initial burden by showing that an enforceable arbitration agreement exists and demonstrating that on numerous occasions Ms. Zheng has rejected its requests to arbitrate as required by the agreement. Therefore, the burden now shifts to the nonmovant, Ms. Zheng, to "raise a genuine dispute of material fact regarding the existence of an agreement or the failure to comply therewith." *BOSCA, Inc.*, 853 F.3d at 1177. We find that Ms. Zheng has failed to meet her burden.

**IV.   Ms. Zheng's *Response*: five arguments against arbitration.**

In her *Response* (ECF No. 37), Ms. Zheng boldly asserts that "it remains a possibility that the company may have unilaterally modified the terms of the DRP without [her] consent or acknowledgement." ECF No. 37 at 2. For this claim, however, Ms. Zheng provides no evidence, and the Court finds none in the record. Her *Response* goes on to list five additional arguments for why the arbitration agreement is invalid and why the Court should abstain from compelling arbitration. *See id.* at 2–3. We will consider each in turn.

First, Ms. Zheng contends that the agreement is unenforceable because she filed a charge with the Equal Employment Opportunity Commission ("EEOC") thereby foreclosing arbitration. *Id.* at 2. Second, she argues that the arbitration agreement is unconscionable and unenforceable "due to its one-sided terms, lack of meaningful choice, and oppressive conditions." *Id.* Third, she argues that public policy favors allowing her claims to proceed in court. *Id.* at 2–3. Fourth, she argues that arbitration is an inadequate

remedy. *Id.* at 3. And fifth, she argues that Defendant waived its right to arbitrate because it failed to move the court to compel arbitration until now. *Id.* For the following reasons, we find each of Ms. Zheng's arguments meritless.

### A. Does filing an EEOC charge bar arbitration?

First, it is true that the DRP agreement did not foreclose the Plaintiff's ability to file an EEOC charge or any other administrative or judicial proceeding, but Plaintiff posits filing such a charge or action somehow renders the arbitration agreement unenforceable. ECF No. 37 at 1–2; ECF No. 38 at 2; *see* ECF No. 27-7 at 10. This is not the case. The DRP does not limit a plaintiff's ability to file an EEOC charge, but choosing to do so has no effect on the validity of the arbitration agreement. We find nothing in the DRP that suggests the type of either/or scenario that Ms. Zheng suggests.[11] *See* ECF No. 27-7 at 10 §§ (A)–(B).

### B. Is the DRP agreement unconscionable?

Plaintiff's second argument is that the arbitration agreement is unconscionable.[12] As the Wyoming Supreme Court has articulated: "First, we consider whether the contract provisions unreasonably favor one party over the other. Second, we consider whether the latter party lacked a meaningful choice in entering into the contract. The first perspective concerns the contract's *substantive unconscionability*. The second concerns its *procedural*

---

[11] *See Response*, ECF No. 37 at 2 ("I, as the plaintiff, contend that *the arbitration agreement had two paths of recourse*, one being EEOC which I followed by filing a charge with the EEOC and then subsequently follow up on the charge with a civil case; therefore, any attempt to compel arbitration is unfounded.") (emphasis added).

[12] *Id.* ("Even if the arbitration agreement that is modified without my consent nor acknowledgment comes to be allowed, it should be deemed unconscionable and unenforceable. It is unconscionable due to its one-sided terms, lack of meaningful choice, and oppressive conditions.").

*unconscionability.*" *Pittard v. Great Lakes Aviation*, 156 P.3d 964, 974 (Wyo. 2017) (emphasis added). Courts typically require some evidence of both varieties to find a contract unconscionable. *Id.* Under the procedural unconscionability prong, Wyoming courts look to several factors including:

> [D]eprivation of meaningful choice as to whether to enter into the contract, compulsion to accept terms, opportunity for meaningful negotiation, such gross inequality of bargaining power that negotiations were not possible, characteristics of alleged aggrieved party (underprivileged, uneducated, illiterate, easily taken advantage of), and surprise by fine print or concealed terms.

*Id.* (quoting *Roussalis*, 4 P.3d at 247). Here, we find none of those factors were present during that formation of the contracts, and what's more, Plaintiff has failed to offer any evidence of such.[13] As for the substantive unconscionability prong, we also find a lack of support. The substance of the agreement does not unconscionably favor Halliburton. Rather, as Halliburton points out, it "merely shifts the forum for resolution from court to arbitration while retaining the safeguards and remedies that would otherwise be available under applicable law." ECF No 38 at 2. The terms of an agreement are not unconscionable or one-sided simply because they require *both* parties to submit to arbitration in lieu of litigation when a dispute arises.

### C.  Does public policy favor litigation over arbitration for claims like Ms. Zheng's?

---

[13] As noted before, Ms. Zheng raises possibility that Halliburton "may have unilaterally modified the terms of the DRP without [her] consent or acknowledgement." However, Ms. Zheng provides no evidence for this claim, and Halliburton counters that the language of the DRP in question was used before Ms. Zheng's employment and was not modified until after Ms. Zheng was terminated. ECF No. 38 at 2 n.1 (citing ECF No 27-6 at 2).

Ms. Zheng's third argument is that of public policy. Her contention is that arbitration would "undermine important federal laws that fundamentally protect employees, such as the ADA, which are best addressed in a court of law rather than in a private arbitration forum." ECF No. 37 at 2. Contrary to Ms. Zheng's assertion, arbitration has generally been favored since the enactment of the FAA. In enacting the FAA, "[n]ot only did Congress require courts to respect and enforce agreements to arbitrate; it also specifically directed them to respect and enforce the parties' chosen arbitration procedures." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). Here, arbitration does not "undermine" the ADA as Ms. Zheng suggests; it simply shifts the medium of resolution. An arbitrator will consider Ms. Zheng's claims, issue factual findings and resolutions, and potentially award compensation if they find the Defendant violated Ms. Zheng's rights. *See Pipkin v. Nabors Indus., Ltd.*, No. 21-MC-156S, 2021 U.S. Dist. LEXIS 262732, at *6–7 (D. Wyo. Sep. 30, 2021) (upholding an arbitral award granted after the arbitrator found plaintiff had successfully demonstrated employer discrimination under the ADA). Therefore, the Court finds Ms. Zheng's public policy argument is similarly without merit.

### D.   Is arbitration an inadequate remedy in Ms. Zheng's case?

Next, Ms. Zheng argues that arbitration is an inadequate remedy. ECF No. 37 at 3. She asserts that arbitration "often lacks the procedural safeguards, transparency, and opportunities for appeal available in a court of law." *Id.* Even assuming, *arguendo*, that Ms. Zheng is correct in this assessment of the general state of arbitration, the Court has already found that she voluntarily consented to the terms of the DRP, and as a result, she

agreed to arbitrate employment disputes, such as this one, with Halliburton. Her contention that arbitration is not the best possible forum to resolve her grievances is irrelevant.[14]

### E. Did Halliburton waive its right to arbitrate?

Finally, Ms. Zheng argues that Halliburton waived its right to arbitration. *Id.* at 3. She asserts that Halliburton's failure to seek arbitration at an earlier stage forecloses its right to arbitrate. *Id.* As the Defendant points out, Ms. Zheng bears the burden of demonstrating that Halliburton waived its right to arbitrate. ECF No. 38 at 3. As the Tenth Circuit Court of Appeals has instructed, Courts use the so-called *Peterson* factors to determine whether a party waived its right to arbitrate. *BOSCA, Inc.*, 853 F.3d at 1174. The *Peterson* factors include the following:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.[15]

*Peterson v. Shearson/American Express, Inc.*, 849 F.2d 464, 467-68 (10th Cir. 1988) (internal quotation marks omitted) (alterations in original). These factors are not applied as

---

[14] It is not the place of this Court to question the FAA's clear Congressional intent to make arbitration clauses "valid, irrevocable, and enforceable" upon consenting parties and to enforce the terms therein. 9 U.S.C. § 2. Our duty is to determine whether a valid arbitration agreement exists, and if we find it does, our duty is to determine whether the agreement encompasses the dispute at bar.

[15] We find that factors four through six are not implicated in this matter, for Defendant did not file a counterclaim and did not take intervening steps such as judicial discovery. Also, we find no evidence that Defendant did anything to delay, mislead, or prejudice Ms. Zheng.

a rigorous balancing test, but rather, they "'reflect principles that should guide courts in determining whether it is appropriate to deem that a party has waived its right to demand arbitration,' even when the party did not subjectively intend to do so." *BOSCA, Inc.*, 853 F.3d at 1170 (quoting *Hill v. Ricoh Ams. Corp.*, 603 F.3d 766, 773 (10th Cir. 2010)).

After reviewing Halliburton's conduct in this matter, the Court finds that it did not waive its right to arbitration either expressly or implicitly. Under the *Peterson* factors, we find that Halliburton's conduct throughout this action has never been inconsistent with its right to arbitrate. To the contrary, Halliburton has consistently reminded Ms. Zheng of the arbitration agreement from the start of this action[16] and has not invoked the type of "litigation machinery" contemplated under the factors. ECF No. 38 at 4. In fact, the only factor that could bend Ms. Zheng's way is the length of time that passed before Halliburton sought a stay. As she notes, more than a year elapsed between the *Complaint* and this *Motion*. ECF No. 37 at 3. This period of delay can, of course, be chalked up to Plaintiff's initial failure to file this action in a proper forum.[17] There is simply nothing in the record—both during the action's pendency in New York and since it was transferred to this district—showing Defendant waived its right to arbitration in this matter. And further, Plaintiff has failed to provide the Court with any specific evidence that would tend to show waiver under the *Peterson* factors.

---

[16] Defendant notes that it first reminded Ms. Zheng of her obligation under the arbitration agreement in October of 2022. ECF No. 38 at 4. Defendant again asked Ms. Zheng to submit to arbitration before and after the transfer to this district, and on both occasions, Ms. Zheng refused. ECF No. 27-8 at 1–6.

[17] Plaintiff filed her *Complaint* on August 2, 2022, and the case was transferred to this district on May 12, 2023. After landing in a proper venue, Defendant moved to compel arbitration and stay the case on July 21, 2023.

17

Based upon the foregoing analysis of Ms. Zheng's five arguments, the Court finds she has failed "raise a genuine dispute of material fact regarding the existence of an agreement or the failure to comply therewith" *BOSCA, Inc.*, 853 F.3d at 1177. Therefore, we find that Ms. Zheng has failed to meet her burden.

## V.     Ms. Zheng's claims fall within the scope of the DRP.

Having found that Ms. Zheng entered into a valid arbitration agreement with Halliburton, the Court must now determine the scope of that agreement, and specifically, whether it covers the dispute at issue here. District courts are to first determine whether an arbitration clause is broad or narrow. *Sanchez v. Nitro-Lift Techs.*, L.L.C., 762 F.3d 1139, 1146 (10th Cir. 2014). Here the Court finds the DRP to be broad in scope. *See* ECF No. 27-7. The Court reaches this conclusion by observing the plain language of the DRP plan and rules. In the DRP *all disputes* not settled or resolved in-house between the employee and Halliburton "shall be finally and conclusively resolved through arbitration under this Plan and the Rules, instead of through trial before a court." *Id.* at 7 § 4(A). And further, the DRP covers "all legal and equitable claims, demands, and controversies" including "allegations of discrimination based on race, sex, religion, national origin, age, veteran status or disability;" and pertinent here, it covers claims of harassment, retaliation, and wrongful discharge. ECF No. 27-7 at 4–5 § (2)(E). "Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Sanchez*, 762 F.3d at 1146 (emphasis removed) (quoting *Cummings v. FedEx Ground Package System, Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005)).

Halliburton's DRP is broad thereby raising the strong presumption of arbitrability for a breadth of claims, but it also provides a non-exhaustive list that happens to contain exactly the types of things Ms. Zheng is alleging here.[18] Therefore, Ms. Zheng's claims are indisputably within the scope of the arbitration agreement.

## CONCLUSION

Defendant's *Motion to Compel Arbitration and Stay Proceedings* is hereby GRANTED. Plaintiff Ming Hong Zheng is ordered to pursue her claims, if at all, in accordance with her agreement to abide by the terms of the Halliburton Dispute Resolution Plan through arbitration on an individual basis. This action is STAYED pending arbitration pursuant to 9 U.S.C. § 3.

Dated this 30th day of October, 2023.

Alan B. Johnson
United States District Judge

---

[18] Even construing *pro se* Plaintiff's *Complaint* liberally—*viz.*, finding that some of her claims would have been properly brought under Title VII rather than the ADA—we still conclude that the DRP encompasses such claims.